This matter came on before the Court on Petitioner John Eddy's Motion for Further Authorization in Connection with Ongoing DNA Testing filed on or about January 21, 2010. The State filed an objection thereto and Petitioner's motion was scheduled for hearing on April 26, 2010. As Petitioner had not yet received the State's written objection, the hearing was re-scheduled to May 3, 2010. On that date, Petitioner had engaged Attorney Arthur Chatfield III to represent him on this motion only, and not with respect to any appeal of the conviction in P1/2004-1286A. After hearing and argument of counsel, and for the reasons set forth herein, Petitioner's motion is denied.
 I Travel
On February 24, 2006, Petitioner was found guilty, after jury trial, of three counts of first degree child molestation and two counts of first degree sexual assault. Petitioner was thereafter sentenced to two consecutive life sentences. Importantly, the five counts on which he was convicted concerned conduct directed at a minor child, Petitioner's step daughter, between July 15 and August 31, 2000 (Counts 1 and 2 for first degree child molestation), between November 1 and December 31, 2000 (Count 3 for first degree child molestation), between April 1 and April 30, 2002 *Page 2 
(Count 4 for first degree sexual assault), and on December 13, 2002 (Count 5 for first degree sexual assault).
Following the conviction, sentencing and appeal to the Rhode Island Supreme Court, [1] Petitioner filed "Petitioner's Petition for Testing DNA Evidence pursuant to R.I. General Laws § 10-9.1-11(c) and § 10-9.1-12" on or about October 23, 2008 (the "Oct. 2008 Petition"), seeking to have the State perform certain tests on biological samples obtained on December 16, 2002 when a Sexual Assault Evidence Collection Kit (Rape Kit) was performed on the victim. Petitioner's then counsel filed the Oct. 2008 Petition and specifically requested that the evidence collected be subject to Y-STR testing. In support thereof, Petitioner's Oct. 2008 Petition stated,
"A reasonable probability exists that petitioner would likely:
 (i) not have been prosecuted or convicted if exculpatory results had been obtained through such DNA testing;[2] and/or
 (ii) that the requested testing will produce DNA results which would have altered the verdict or reduced the petitioner's sentence if the results had been available at the prior proceedings leading to the judgment of conviction."[3]
(Oct. 2008 Petition, at ¶ 8.)
Included in the Rape Kit were vaginal, rectal and oral swabs of the victim as well as pubic hair combings. There was no other physical evidence obtained from the victim that Petitioner sought in the Oct. 2008 Petition. *Page 3 
A hearing on the Oct. 2008 Petition was conducted on November 18, 2008, before a Justice sitting on the Daily Criminal Calendar. By Order dated December 8, 2008, the Court ordered as follows:
 "Petitioner's Motion for DNA testing is granted as prayed and shall include Y-STR analysis.
 The State of Rhode Island Forensic Laboratory shall forthwith submit the evidence in its possession in the Sexual Assault Evidence Collection submitted to the State laboratory on December 20, 2002, for said DNA testing and report said results to the Petitioner, his counsel, and the Attorney General's office upon receipt thereof.
 The Petitioner having been previously found to be indigent, the State of Rhode Island is ordered to pay the costs and expenses for the DNA testing, including Y-STR analysis; however, this order is limited to those charges the State would ordinarily pay for such testing pursuant to its annual contract rate schedule with ORCHID CELLMARK." (Dec. 8, 2008 Order)
Testing apparently was not conducted immediately, and Petitioner filed a Motion to Compel the DNA testing and to hold the State in contempt for failing to have submitted the Rape Kit samples for testing. This motion was heard before the then Presiding Justice on May 19, 2009. The Presiding Justice denied Petitioner's motion to hold the State in contempt but did order the testing of the Rape Kit samples, specifically citing the Y-STR testing and analysis:
 "The Rhode Island Department of Health shall submit forthwith all samples contained in the Rape Kit collected from the complaining witness in this matter which was the subject of a jury trial, Providence County Superior Court No. P1/04-1286A, to Orchard Cellmark for DNA, which such testing shall include Y-STR testing and analysis.
 The Rhode Island Judiciary shall pay Orchard Cellmark for each of the aforesaid testing of all samples contained in the Rape Kit in connection with Providence County Superior Court No. P1/04-1286A." (May 28, 2009 Order)
By report dated August 31, 2009, Orchid Cellmark concluded that the requested Y-STR analysis that was performed on the vaginal, rectal, and oral swabs taken from the victim revealed that "male DNA was not detected from the epithelial fraction of the . . . swabs." What remained *Page 4 
from the Rape Kit, however, was a single pubic hair which contained no root and therefore could not be tested by the Y-STR analysis. This single pubic hair is the subject of Petitioner's present Motion for Further Authorization in Connection with Ongoing DNA Testing. Petitioner argues that the results of this additional testing is necessary exculpatory evidence to which he is entitled pursuant to § 10-9.1-11 and-12, and that his entitlement to such additional testing has already been decided by previous Orders of this Court, namely the December 8, 2008 Order and the May 28, 2009 Order. The cost of the additional mitochondrial DNA analysis that is sought is $2250/sample.
The State maintains that Petitioner does not have an absolute right to additional testing but that such additional testing is within the discretion of this Court. Moreover, the State has acknowledged on the record that even conceding that the requested DNA testing of the rootless pubic hair reveals no DNA evidence connecting this Petitioner to the Rape Kit, it is not reasonably likely that such results would have altered the indictment or the conviction on this five-count indictment. Principle among the State's argument is that the Rape Kit was collected three (3) days after the last of the five events which comprised the indicted crimes. Similarly, the State argues that this Court should not exercise its discretion to grant further DNA testing because it is not reasonably likely that such results, as conceded above, would have altered the verdict or reduced Petitioner's sentence. The State also asserts that the prior Court Orders only granted Y-STR testing and nothing more to which this Court would be bound. *Page 5 
 II ANALYSIS A Prior Court Orders Did Not Conclude That Petitioner Was or Is Entitled to Mandatory DNA Testing
As a threshold matter, this Court will address Petitioner's contention that the prior Orders of this Court dictate that further DNA testing is required and that this Court is without authority to find otherwise. Notably, the two prior Orders did not expressly find that DNA testing was mandated pursuant to § 10-9.1-12(a). Rather, the December 8, 2008 Order and May 28, 2009 Order were issued in response to Petitioner's general reliance on § 10-9.1-12. While the Oct. 2008 Petition relied upon the standards for both mandatory and discretionary testing, neither Order expressly determines whether testing was ordered pursuant to § 10-9.1-12(a) (mandatory testing) or § 10-9.1-12(b) (discretionary testing).
Further, the Oct. 2008 Petition requested only Y-STR testing. (Oct. 2008 Petition, at ¶ 7.) The two Court Orders that followed expressly granted the request for Y-STR testing. No "catch all" testing was requested by Petitioner or granted by the Court.
For these reasons, this Court is not estopped from either considering the within Motion for Further Authorization in Connection with Ongoing DNA Testing, or finding that any DNA testing that was previously authorized was discretionary and not mandatory pursuant to Rhode Island General Laws. *Page 6 
 B Petitioner Is Not Statutorily Entitled to Further DNATesting
Given the dates of the alleged offenses which constitute the five counts in the indictment and the date the Rape Kit was collected, this Court cannot conclude that a reasonable probability exists that Petitioner would not have been prosecuted or convicted if the results of further DNA testing provide exculpatory evidence.See § 10-9.1-12(a)(1). Indeed, the State has agreed at oral argument that a finding that the additional DNA testing reveals no DNA of Petitioner found in the rootless pubic hair would have no bearing on the indictment or the conviction. The Rape Kit was collected three (3) days after the last of the incidences that took place over the previous two years. Additionally, the relationship between the Petitioner and the victim — his step-daughter — reveals that this is not a question of mistaken identity of the perpetrator of a series of sexual assault and molestation. Accordingly, any evidence that may be derived from the additional DNA testing of the rootless pubic hair that Petitioner now seeks is not reasonably likely to have had any effect on whether Petitioner was indicted or convicted, and therefore Petitioner is not statutorily entitled under § 10-9.1-12(a) to further DNA testing at the State's expense. Further, the results of additional DNA testing as now sought would not be reasonably likely to have altered the verdict or reduced Petitioner's sentence. Section 10-9.1-12(b)(1). At most, a finding that no DNA of the Petitioner is found in the rootless pubic hair collected on December 16, 2002 would have a bearing only on Count 5 (first degree sexual assault on December 13, 2002). The jury, however, found that the evidence demonstrated beyond a reasonable doubt that Petitioner was guilty of Counts 1 through 4, inclusive, for which Petitioner was sentenced to two *Page 7 consecutive life sentences. The sentence rendered for Count 5 was a life sentence to run concurrent with the life sentence handed down for Count 4 (first degree sexual assault between April 1 and April 30, 2002), which was to run consecutive to the life sentences rendered on Counts 1, 2 and 3 (first degree child molestation charges, which life sentences in each was ordered to be concurrent with one another). Taking Count 5 out of the equation still leaves Petitioner with two consecutive life sentences. Therefore, it is not reasonable to find that the further DNA testing sought would have altered the two consecutive life sentences that Petitioner received for Counts 1 through 4, inclusive, and therefore Petitioner would not be afforded additional DNA testing at the State's expense pursuant to § 10-9.1-12(b).
 C The Interests of Justice Do Not Mandate Further DNATesting
Even if this Court were to find that further DNA testing is discretionary pursuant to § 10-9.1-12(b), this Court would decline to exercise such discretion. The State's concession that no DNA evidence of the Petitioner will be found in the rootless pubic hair answers every reasonable question that remains. Additional testing would be a waste of financial resources and would provide no additional evidence beyond what the State has offered in its stipulation.
Petitioner asserts that it is at his own risk that he seeks to have the additional DNA testing performed. In other words, if there is a positive match connecting Petitioner to the pubic combing, than his guilt has been further established. This Court is not swayed that that is a genuine or reasonable basis to exercise this Court's discretion to allow further DNA testing at the State's expense. The interests of justice do not warrant further, expensive DNA testing at the State's expense in light of the State's concession. Rather the interests of justice warrant a final decision on DNA testing so that appellate review can commence forthwith. *Page 8 
 III Conclusion
For the foregoing reasons, Petitioner's Motion is denied. An order consistent with this Decision shall be prepared by counsel for the State.
[1] The appeal has been stayed at Petitioner's request pending the DNA testing discussed herein.
[2] Petitioner's argument tracks the standard set forth in § 10-9.1-12(a) for mandatory DNA testing, which subsection provides in pertinent part:
 (a) Mandatory testing. After notice to the prosecution and a hearing, a justice of the superior court shall order testing after finding that:
 (1) A reasonable probability exists that petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing.
[3] Petitioner's argument tracks the standard set forth in § 10-9.1-12(b) for DNA testing to be conducted within the discretion of the court, which subsection provides in pertinent part:
 (b) Discretionary testing. After notice to the prosecution and a hearing, a justice of the superior court may order testing after finding that:
 (1) A reasonable probability exists that the requested testing will produce DNA results which would have altered the verdict or reduced the petitioner's sentence if the results had been available at the prior proceedings leading to the judgment of conviction.